UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES M. MURRELL III,<br><br>        Plaintiff,<br><br>   v.<br><br>PATRIOT FRONT, THOMAS ROUSSEAU, AND JOHN DOES 1-99,<br><br>        Defendants. | Civil Action No. 1:23-cv-11802 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT**

FOLEY HOAG LLP
Anthony Mirenda (BBO No. 550587)
Allen M. Thigpen (BBO No. 707799)
Caroline Holliday (BBO No. 707301)
155 Seaport Blvd., Suite 1600
Boston, Massachusetts 02210-2600
Tel: 617-832-1000
Fax: 617-832-7000
ADM@foleyhoag.com
athigpen@foleyhoag.com
cholliday@foleyhoag.com

James M. Gross (admitted *pro hac vice*)
Jace Lee (admitted *pro hac vice*)
1301 Avenue of the Americas
New York, NY 10019
Tel: 212-812-0400
Fax: 212-812-0399
jgross@foleyhoag.com
jalee@foleyhoag.com

*Counsel for Plaintiff Charles M. Murrell III*

August 21, 2024

## **TABLE OF CONTENTS**

RELEVANT BACKGROUND ................................................................................................... 1

ARGUMENT .................................................................................................................................. 4

    A.    Mr. Murrell Is Entitled To A Significant Damages Award That Compensates Him For His Physical And Emotional Injuries. ................................................................................ 4

    B.    Mr. Murrell Is Entitled To Special Damages In The Form Of Lost Wages And Lost Earning Potential. .............................................................................................................. 9

    C.    Mr. Murrell Is Entitled To A Significant Punitive Damages Award Against Each Defendant. ....................................................................................................................... 10

    D.    Mr. Murrell Is Entitled To His Reasonable Attorneys' Fees. .......................................... 12

CONCLUSION ............................................................................................................................. 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bogan v. City of Boston*,
    2005 U.S. Dist. LEXIS 53866 (D. Mass. Dec. 8, 2005) .............................................................9

*Borne v. Haverhill Golf & Country Club, Inc.*,
    58 Mass. App. Ct. 306 (2003) ....................................................................................... 11, 12, 15

*Chao v. Ballista*,
    2011 U.S. Dist. LEXIS 171763 (D. Mass. May 5, 2011) .........................................................9

*Charles v. Leo*,
    96 Mass. App. Ct. 326 (2019) ............................................................................................10, 11

*Dimanche v. Bos. Carmen's Union*,
    2020 Mass. App. Unpub. LEXIS 588 (Mass. App. Ct. June 30, 2020) ...................................11

*Doe v. Martin*,
    2021 Mass. Super. LEXIS 452 (Aug. 2, 2021) ........................................................................10

*Doucout v. IDS Scheer, Inc.*,
    734 F. Supp. 2d 172 (D. Mass. 2010) ......................................................................................17

*Formulatrix, Inc. v. Rigaku Automation, Inc.*,
    344 F. Supp. 3d 410 (D. Mass. 2018) ......................................................................................17

*Franco v. Selective Ins. Co.*,
    184 F.3d 4 (1st Cir. 1999) ..........................................................................................................5

*Griffin v. Breckenridge*,
    403 U.S. 88 (1973) .....................................................................................................................7

*Hayes v. Don Law Co.*,
    1996 U.S. Dist. LEXIS 22814 (D.R.I. June 20, 1996) ............................................................14

*Irizarry v. Quiros*,
    722 F.2d 869 (1st Cir. 1983) ....................................................................................................14

*Kelley v. Commonwealth Dep't of Conservation & Rec.*,
    2014 Mass. Super. LEXIS 49 (Mar. 17, 2014) ..................................................................10, 11

*Libertad v. Sanchez*,
    134 F. Supp. 2d 218 (D.P.R. 2001) ................................................................................. *passim*

*Libertad v. Sanchez*,
    215 F.3d 206 (1st Cir. 2000)..................................................................................................7

*Memphis Cmty. Sch. Dist. v. Stachura*,
    477 U.S. 299 (1986)..................................................................................................9

*Perna v. Martinez*,
    2021 U.S. Dist. LEXIS 63958 (Mar. 31, 2021) (Talwani, J.)......................................... *passim*

*Rodriguez v. Schools*,
    2022 U.S. Dist. LEXIS 139451 (D. Mass. Aug. 5, 2022) ........................................................14

*Sines v. Kessler*,
    324 F. Supp. 3d 765 (W.D. Va. 2018) ..................................................................................7

*Sowell v. Vose*,
    1991 U.S. App. LEXIS 21204 (1st Cir. July 25, 1991) (per curiam) ........................................9

*State Farm Mut. Auto Ins. Co. v. Campbell*,
    538 U.S. 408 (2003)................................................................................................16

*Tobin v. Liberty Mut. Ins.*,
    553 F.3d 121 (1st Cir. 2009)..............................................................................11, 16

**Statutes**

42 U.S.C. § 1985.................................................................................................. *passim*

42 U.S.C. § 1988(b) ................................................................................................16

Massachusetts Civil Rights Act, Mass. Gen. Laws. c. 12, § 11......................................................7

Rule 41(a)(1)(A)(i)....................................................................................................9

Rule 55(b)(2).........................................................................................................8

**Other Authorities**

CPI Inflation Calculator, U.S. Bureau of Labor Statistics, *available at*
    https://data.bls.gov/cgi-bin/cpicalc.pl?cost1=424000&year1=200301&
    year2=202406 (last visited August 21, 2024)........................................................11

**RELEVANT BACKGROUND**

Mr. Murrell served the Summons and Complaint in this action on Defendant Thomas Rousseau personally and on Defendant Patriot Front (together with Mr. Rousseau, "Defendants") via the alternative means authorized by this Court.  ECF Nos. 21 & 29.  The Defendants also acknowledged the existence of this lawsuit on Patriot Front's social media channels shortly after it was filed.  *See* ECF No. 20 at 3; *see also* ECF No. 17 ¶ 16.  Despite their demonstrated knowledge of this lawsuit and ample opportunities to respond, neither Defendant entered an appearance or filed a responsive pleading, resulting in an Entry of Default against each Defendant.  ECF Nos. 23 & 35.  By refusing to participate in this lawsuit, the Defendants "have conceded the truth of the factual allegations in the complaint."  *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.4 (1st Cir. 1999).

As such, the undisputed facts show that on July 2, 2022, members of Patriot Front, at the direction of their leader, Thomas Rousseau, intentionally and violently attacked Mr. Murrell because of his race.  On that day, Mr. Murrell—an African American musician—was walking on a public sidewalk on his way to play his saxophone near the Boston Public Library when he encountered a group of Patriot Front members marching in the opposite direction as part of a "flash" demonstration.  ECF No. 1, Complaint at ¶¶ 107-08.  Taken aback by the Patriot Front members' metal shields and now infamous white-supremacist uniforms of khaki pants, polo shirts, and masked faces, Mr. Murrell paused to record the group on his phone.  *Id.* at ¶ 109.  Before he could do so, however, Mr. Murrell found himself the target of a racial epithet.  *Id.* at ¶ 110.  Almost immediately thereafter, Patriot Front members encircled him, shouting "DO NOT BREAK OUR RANKS."  *Id.*

What happened next has left an indelible mark on Mr. Murrell. At Mr. Rousseau's command of "RIGHT SCREEN!", the Patriot Front members did exactly as Mr. Rousseau previously trained them to do, beginning to violently smash Mr. Murrell with their metal shields. *Id.* at ¶¶ 111-14. As the attack intensified, Mr. Murrell found himself pressed against a concrete light post by a wall of metal shields before he fell to the ground, where Patriot Front members continued to kick and hit him. *Id.*; *see also* Declaration of Caroline Holliday (hereafter, "Holliday Decl."), Exhibits B – C (images of the attack); H – J (video footage of the incident). Only after law enforcement intervened did the attack relent, leaving a bloodied Mr. Murrell with immediate physical injuries and long-lasting emotional harm that haunts him to this day. Complaint at ¶¶ 112, 117-19.

The July 2, 2022 attack on Mr. Murrell was not an accident. *Id.* at ¶ 6. For years, Mr. Rousseau trained Patriot Fronts' members to use their shields as weapons in the precise manner that the Patriot Front members did against Mr. Murrell. *Id.* at ¶¶ 73-81. Patriot Front's own training videos leaked online confirm as much. *Id.*; *see also* Holliday Decl., Exs. L – N (Patriot Front training videos described by the Complaint at ¶¶ 73-81). For years, Patriot Front members engaged or attempted to engage in violence in furtherance of their white nationalist goals, attacking bystanders with their shields at a flash demonstration one year earlier on July 3, 2021 in Philadelphia and attempting to riot violently on June 11, 2022 at a Pride festival in Coeur d'Alene, Idaho. Complaint at ¶¶ 82-95. And for years, Patriot Front has reveled in that violence, promoting it on its social media accounts. *Id.* at ¶¶ 64-72. The attack on Mr. Murrell was no exception, with Patriot Front triumphantly publishing footage of the incident and mocking Mr. Murrell on its social media page. *Id.* at ¶ 120; *see also* Holliday Decl., Ex. O (Patriot Front video posted on social media and described by the Complaint at ¶ 120).

These now-undisputed facts establish that Defendants are liable to Mr. Murrell under the federal Ku Klux Klan Act of 1871, 42 U.S.C. § 1985, and Massachusetts law. As the Complaint details (at ¶¶ 121-29), Defendants harmed Mr. Murrell when they conspired to deprive him of his constitutional rights—including his Thirteenth Amendment right to be free from the badges and incidents of slavery and Fourteenth Amendment right to travel—and committed overt acts in furtherance of that conspiracy. That is the precise circumstance that the United States Supreme Court and other courts have held violates 42 U.S.C. § 1985(3). *See Griffin v. Breckenridge*, 403 U.S. 88, 103 (1973); *Sines v. Kessler*, 324 F. Supp. 3d 765, 773 (W.D. Va. 2018); *see also Libertad v. Sanchez*, 215 F.3d 206, 208 (1st Cir. 2000) ("Plaintiffs' allegations, when credited as they must be" after defendants' default, "certainly seem to establish that plaintiffs suffered a number of harms compensable under § 1985(3) and Puerto Rico tort law"). The Complaint also establishes that Defendants violated the Massachusetts Civil Rights Act, Mass. Gen. Laws. c. 12, § 11, *see* Complaint at ¶¶ 130-33, and that Defendant Rousseau is liable for committing the intentional torts of civil conspiracy, civil aiding and abetting, civil assault and battery, and intentional infliction of emotional distress, Complaint at ¶¶ 134-50.

All that remains is for this Court to determine the damages to which Mr. Murrell is entitled because of Defendants' illegal and unconstitutional conduct. Mr. Murrell respectfully submits that the facts alleged in the Complaint, the documentary evidence attached to this Motion, and the evidence to be adduced at the upcoming evidentiary hearing justify a significant compensatory and punitive damages award. Compensatory damages are necessary to compensate Mr. Murrell for the substantial physical and emotional injuries he suffered at Defendants' hands. Of equal importance, imposing punitive damages on each Defendant for their respective conduct is critical to confirming that our Nation's laws do not tolerate racially

motivated violence and to deterring such violence. This Court should send a clear message that Defendants' un-American conduct can never happen again.

## ARGUMENT

Rule 55(b)(2) provides that "[w]here, as here, the Complaint does not describe a 'sum certain' for damages, 'the plaintiff bears the burden of proof and must introduce evidence to establish the amount of damages with reasonable certainty.'" *Perna v. Martinez*, 2021 U.S. Dist. LEXIS 63958, at *15 (Mar. 31, 2021) (Talwani, J.) (quoting Fed. R. Civ. P. 55(b)(2)). The plaintiff can satisfy that burden "through an evidentiary hearing, or through affidavits and other documentary submissions that provide a factual basis for determining the amount of damages to be awarded." *Id.*

Mr. Murrell respectfully submits that the documents attached to this Motion and the evidence to be adduced at the upcoming evidentiary hearing justify a damages award that (1) compensates Mr. Murrell for his physical and emotional injuries; (2) recoups his lost wages and loss of economic opportunity stemming from his injuries; (3) punishes Patriot Front and Rousseau in the form of punitive damages; and (4) permits Mr. Murrell to recover his reasonable attorneys' fees and costs.

### A. Mr. Murrell Is Entitled To A Significant Damages Award That Compensates Him For His Physical And Emotional Injuries.

"A prevailing section 1985 plaintiff is entitled to compensatory damages." *Libertad v. Sanchez*, 134 F. Supp. 2d 218, 225 (D.P.R. 2001); *see also* 42 U.S.C. § 1985(3) ("The party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."). So too is a plaintiff prevailing on Massachusetts common law tort claims. *Perna*, 2021 U.S. Dist. LEXIS 63958, at *14. As joint section 1985 tortfeasors responsible for Mr. Murrell's injuries, Defendants are "jointly and

severally liable" on any compensatory damages award here. *E.g.*, *Chao v. Ballista*, 2011 U.S. Dist. LEXIS 171763, at *3 (D. Mass. May 5, 2011).

As noted, Mr. Murrell seeks a judgment in his favor on each of the claims asserted in the Complaint: Counts 1 and 2 against both Defendants, and Counts 3-6 against Defendant Rousseau.[1] Notwithstanding those multiple counts, and consistent with the "basic principle of compensatory damages that an injury can be compensated only once," *e.g.*, *Bogan v. City of Boston*, 2005 U.S. Dist. LEXIS 53866, at *6 (D. Mass. Dec. 8, 2005), Mr. Murrell seeks a single compensatory damages award for the injuries he suffered because of Defendants' conduct. Because "the relief afforded is largely identical" under the federal civil rights statutes and Massachusetts law, Mr. Murrell focuses herein on the harm he suffered because of each Defendant's violation of section 1985. *Perna*, 2021 U.S. Dist. LEXIS 63958, at *14; *see also Libertad*, 134 F. Supp. 2d at 225 (taking same approach when evaluating damages available to plaintiff on motion for default judgment on section 1985 and Puerto Rico tort claims).

"Compensatory damages are generally divided into two broad categories": general damages and special damages. *Perna*, 2021 U.S. Dist. LEXIS 63958, at *15. "'General Damages' . . . refer to those compensatory damages 'for a harm so frequently resulting from the tort that is the basis of the action that the existence of the damages is normally to be anticipated.'" *Id.* (quoting Restatement (Second) of Torts § 904 (1979)). Such general damages include compensation for physical injuries as well as for "impairment of reputation, personal humiliation, and mental anguish and suffering." *E.g.*, *Memphis Cmty. Sch. Dist. v. Stachura*, 477

---

[1] While Mr. Murrell also brought claims against John Does 1-99, "the presence of doe defendants does not prevent entry of final judgment." *Sowell v. Vose*, 1991 U.S. App. LEXIS 21204, at *1 n.1 (1st Cir. July 25, 1991) (per curiam). To the extent necessary, Mr. Murrell will file a voluntary stipulation of dismissal without prejudice of his claims against the John Doe defendants pursuant to Rule 41(a)(1)(A)(i).

U.S. 299, 307 (1986) (alteration omitted); *Libertad*, 134 F. Supp. 2d at 225 (same). Such damages can be established by a plaintiff's testimony and other documentary evidence alone; expert testimony is not required. *E.g.*, *Perna*, 2021 U.S. Dist. LEXIS 63958, at *25-26 (plaintiff's testimony at evidentiary hearing regarding the "violative nature of the assaults" and her "long-lasting mental anguish and suffering" readily supported a $150,000 general damages award).

To be sure, attempting to "put[] a dollar value on non-economic damages presents a particularly challenging task" given that "'there is no scientific formula or measuring device which can be applied to place a precise dollar value on 'concepts such as pain and suffering.'" *Id.* at *24 (quoting *Limone v. United States*, 579 F.3d 79, 105 (1st Cir. 2009)). With that said, Massachusetts courts have not hesitated to impose significant, multi-million-dollar general damages awards when the record shows that a plaintiff suffered both physical injury and emotional harm. *See, e.g.*, *Doe v. Martin*, 2021 Mass. Super. LEXIS 452, at *10 (Aug. 2, 2021) (awarding $2.5 million in general damages for physical and emotional injuries plaintiff suffered from sexual assault).

Moreover, courts have upheld high six-figure general damages awards when the record consisted primarily of evidence of emotional distress rather than physical injury. *E.g.*, *Charles v. Leo*, 96 Mass. App. Ct. 326, 343 (2019) (affirming $500,000 emotional distress damages award when plaintiff "did not seek help from a professional therapist or psychiatrist" but there was evidence her "distress manifested itself in many different ways" such as "lost confidence, hair, appetite, sleep, interests, and her active social life"); *Kelley v. Commonwealth Dep't of Conservation & Rec.*, 2014 Mass. Super. LEXIS 49, at *16-19 (Mar. 17, 2014) (testimony from plaintiff and her family that plaintiff suffered from anxiety, sadness, and depression that

prevented her from pursuing "the many activities she had enjoyed" prior to unlawful retaliation from her employer justified a $500,000 emotional distress award).  Courts have likewise upheld high six-figure general damages awards in cases with a discrimination component notwithstanding the absence of any physical injury.  *See, e.g.*, *Borne v. Haverhill Golf & Country Club, Inc.*, 58 Mass. App. Ct. 306, 320 (2003) (upholding $424,000 general damages award to plaintiff who was denied access to golf club because of her race to compensate her for the "emotional damage incident to being placed in a second class citizen status, made to feel inferior, socially ostracized, and demeaned in public")[2]; *see also Tobin v. Liberty Mut. Ins.*, 553 F.3d 121, 144-45 (1st Cir. 2009) (finding that plaintiff's testimony alone supported $500,000 emotional distress award to employee harmed by employer's failure to accommodate his bipolar disability in accordance with the Americans with Disabilities Act); *Dimanche v. Bos. Carmen's Union*, 2020 Mass. App. Unpub. LEXIS 588, at *4-5 (Mass. App. Ct. June 30, 2020) (upholding $490,500 emotional distress award where discrimination against plaintiff based on her national origin caused her prolonged emotional distress).

Mr. Murrell respectfully submits that the significant and long-lasting injuries that he suffered because of Defendants' illegal conduct justify a general damages award well above those permitted in cases like *Charles*, *Kelley*, *Borne*, *Tobin*, and *Dimanche*.  As the Complaint establishes and Mr. Murrell will describe in detail at the evidentiary hearing, Defendants' attack left him with lacerations on his hand and face.  Those injuries required immediate medical attention (including stitches) and, even today, impact his ability to play the saxophone—one of

---

[2] According to the United States Bureau of Labor Statistics, an award of $424,000 in 2003 is akin to $733,132.64 today.  *See* CPI Inflation Calculator, U.S. Bureau of Labor Statistics, *available at* https://data.bls.gov/cgi-bin/cpicalc.pl?cost1=424000&year1=200301&year2=202406 (last visited August 21, 2024).

- 7 -

the primary ways that Mr. Murrell both earned a living and expressed himself artistically prior to the attack. Moreover, Mr. Murrell suffered long-lasting psychological injuries because of Defendants' illegal conduct, including severe anxiety, loss of sleep, nightmares, and a loss of his will to write or perform music. Many of those injuries persist to this day. Finally, like the plaintiff in *Borne*, Mr. Murrell will offer evidence regarding the deep impact that Defendants' targeted, demeaning treatment of him because of his skin color had and continues to have on his psyche.

While Mr. Murrell's testimony alone is sufficient to establish each of those compensable harms, that testimony is buttressed by documentary evidence attached to this Motion and other testimony to be adduced at the hearing. A day-of-incident report created by an officer with the Boston Police Department immediately after the July 2, 2022 attack described Mr. Murrell as the victim of a "suspected hate crime," noting that the attack involved use of weapons in the form of a "Military Shield" and "Personal Weapons (Hand/Feet)" committed by individuals with an "Anti-Black o[r] African American" "hate bias / motivation." Holliday Decl., Ex. E. That same report noted that Mr. Murrell had suffered from "suspected serious injury" in the form of a "laceration requiring stitches" to his right finger as well as a "small laceration to left eyebrow." Holliday Decl., Ex. E. Another police report created by a member of the Boston Police Department's Civil Rights Unit on July 9, 2022 likewise observed that Defendants' attack on Mr. Murrell was "more likely than not motivated in whole or in part by Anti-Black bias," that Mr. Murrell "had blood on his face and his hands were scraped up," and that Mr. Murrell "sustained injuries to the inside of his right ring finger (stiches needed), [and] bruises on the left side of his face and both arms." Holliday Decl., Ex. F. And video footage of EMS technicians with Mr. Murrell in an ambulance immediately after the attack shows Mr. Murrell receiving treatment on

his hands—one technician remarks that "as a sax player, I know your hands are very important to you"—head, and back.  Holliday Decl., Ex. G.

The medical records attached as exhibits to this Motion corroborate those contemporaneous documentary and video accounts.  *See* Holliday Decl., Exhibit G.  According to the notes of the Attending Physician who treated Mr. Murrell at Tufts Medical Center Emergency Department on July 2, 2022, Mr. Murrell sustained scattered abrasions along his hands and above his left eyebrow, a laceration on his middle finger that required Dermabond to close, a sprain of his interphalangeal joint on his right middle finger that required a splint, and bruising to his right flank.  Holliday Decl., Ex. G.  Mr. Murrell can be seen wearing the splint applied at Tufts Medical Center in a photograph taken on July 4, 2022.  *See* Holliday Decl., Ex. D; Complaint at ¶ 117.

Finally, Mr. Murrell also anticipates offering both expert and additional lay testimony establishing the nature and extent of the emotional suffering that the Defendants have caused him.  Mr. Murrell respectfully submits that this evidence overwhelmingly establishes that he suffered general damages far in excess of the high six- and seven-figure general damages amounts awarded by other Massachusetts courts.

    **B.**    **Mr. Murrell Is Entitled To Special Damages In The Form Of Lost Wages And Lost Earning Potential.**

In addition to General Damages, compensatory damages also encompass "Special Damages" designed to compensate the plaintiff "for a harm other than one for which general damages are given."  *Perna*, 2021 U.S. Dist. LEXIS 63958, at *15.  "In cases involving harm to a person, 'harm to earning capacity, expenses for medical treatment and similar items are ordinarily treated as bases for special damages.'"  *Id.* (quoting Restatement (Second) of Torts § 904 (1979)).

Mr. Murrell seeks two categories of special damages here: lost wages and a loss of future earning potential. In support thereof, Mr. Murrell will provide testimony at the hearing establishing that prior to being attacked by Defendants on July 2, 2022, he typically earned approximately $1,000 per week playing saxophone. For more than two weeks after the attack, however, Mr. Murrell's physical injuries prevented him from playing saxophone altogether and thus deprived him of that income stream. Even once those lacerations largely healed, Mr. Murrell's lasting physical and emotional injuries prevented him from performing saxophone at the level and frequency with which he once played. Mr. Murrell will testify how, due to the physical injuries he suffered, his hands are no longer as dexterous as they once were, that because of the long-lasting emotional scars of the attack he now frequently "locks up" while playing, and otherwise show that he may never again be able to play as he did before July 2, 2022, depriving him of what had previously been his primary source of income for the remainder of his life.

### C. Mr. Murrell Is Entitled To A Significant Punitive Damages Award Against Each Defendant.

"Courts may award punitive damages for violation of section 1985." *Libertad*, 134 F. Supp. 2d at 230; *Irizarry v. Quiros*, 722 F.2d 869, 872 (1st Cir. 1983) (same). Punitive damages are assessed on a defendant-by-defendant basis. *See, e.g.*, *Hayes v. Don Law Co.*, 1996 U.S. Dist. LEXIS 22814, at *11-12 (D.R.I. June 20, 1996).

"'The purpose of punitive damages is twofold: to punish a wrongdoer for his outrageous conduct and to deter him and others like him from similar conduct in the future.'" *Rodriguez v. Schools*, 2022 U.S. Dist. LEXIS 139451, at *8 (D. Mass. Aug. 5, 2022) (quoting *Pan Am Railways, Inc. v. United States Dep't of Lab.*, 855 F.3d 29, 38 (1st Cir. 2017) (cleaned up)); *see also Perna*, 2021 U.S. Dist. LEXIS 63958, at *28-29 (same). When the record on a default

judgment shows that defendants acted with either a "specific intent to violate" or a "reckless indifference towards a plaintiff's federally protected right," punitive damages are warranted. *Perna*, 2021 U.S. Dist. LEXIS 63958, at *29; *see also Libertad*, 134 F. Supp. 2d at 230. Consistent with this case law, courts have not hesitated to impose significant punitive damages against defendants who intentionally trampled on or acted in flagrant disregard of a plaintiff's right to equal protection under the law. *See, e.g.*, *Borne*, 58 Mass. App. Ct. at 321-23 (upholding a punitive damages award of $1,430,000—nearly 3.5 times the compensatory damages award—imposed by a jury to punish a golf club for excluding an African American woman from its membership because of her gender and race).

This Court should take the same approach and impose a significant punitive damages award against both Defendants here. As the Complaint establishes, both Defendants acted in flagrant disregard of, if not intentionally violated, Mr. Murrell's federally protected rights when they attacked him on July 2, 2022. The police reports generated in the aftermath of the July 2, 2022 attack confirm as much, describing Patriot Front's attack—committed at Mr. Rousseau's direction—as a suspected "hate crime" that was motivated "in whole or in part by Anti-Black bias." Holliday Decl., Ex. E & F. Indeed, the actions taken by Defendants on that day were only the latest episode in their longstanding effort—all under Mr. Rousseau's leadership—to deprive minorities of their federal rights through violence and intimidation. *See generally* Complaint.

Nor have Defendants demonstrated any remorse for their illegal conduct. To the contrary, Defendants celebrated their attack on Mr. Murrell and publicly ridiculed him on their social media pages (which remain active to this day), *see, e.g.*, Complaint at ¶ 120; Holliday Decl., Ex. O, all the while thumbing their collective noses at this Court by refusing to participate in this lawsuit.

Finally, the Complaint demonstrates that absent a punitive damages award, what happened to Mr. Murrell on July 2, 2022 is likely to happen again. Absent a substantial punitive damages award against Mr. Rousseau, he will continue organizing groups like Patriot Front and instructing them to proliferate their white supremacist message by depriving minorities of their constitutional rights. Likewise, absent a substantial punitive damages award against Patriot Front, members will continue to heed the call of their ringleader, Mr. Rousseau, in carrying out the violent tactics he espouses. After all, racially motivated violence is a key component of Defendants' strategy to promote their white nationalist views. To the extent any question remains as to the dangers Defendants will continue to pose absent deterrence, Mr. Murrell intends to introduce expert testimony at the evidentiary hearing confirming that fact.

Accordingly, Mr. Murrell respectfully requests that the Court impose the maximum possible punitive damages award permitted by the Due Process Clause. *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (declining to impose a hard cap on the amount of punitive damages that can be awarded but explaining that "[s]ingle-digit multipliers are more likely to comport with due process").

**D.     Mr. Murrell Is Entitled To His Reasonable Attorneys' Fees.**

Finally, 42 U.S.C. § 1988(b) authorizes this Court to "award attorney's fees" to Mr. Murrell because of Defendants' violation of Section 1985. *Libertad*, 134 F. Supp. 2d at 230. "Where a party prevails in a civil rights action, attorneys' fees are generally granted unless such an outcome would be unjust." *Id.*

Mr. Murrell requests that the Court defer the question of an attorneys' fees award until after the conclusion of the evidentiary hearing and the Court's decision. *See, e.g.*, *Tobin*, 553 F.3d at 149 ("where fees are mandated by statute," the "better practice" is "to set the fee at the

conclusion of trial"). Mr. Murrell therefore requests leave to file a separate motion for attorneys' fees within 30 days of any Opinion and Order issued on this Motion. *See, e.g.*, *Doucout v. IDS Scheer, Inc.*, 734 F. Supp. 2d 172, 191-92 (D. Mass. 2010) ("[T]his court awaits the final adjudication on the merits before it will entertain requests for attorney's fees."); *Formulatrix, Inc. v. Rigaku Automation, Inc.*, 344 F. Supp. 3d 410, 432-33 (D. Mass. 2018) (same).

## CONCLUSION

For the foregoing reasons, this Court should grant Mr. Murrell's Motion for Default Judgment and award him general, special, and punitive damages. This Court should further enter an order requiring Mr. Murrell to submit a motion for attorneys' fees with appropriate documentation within 30 days of any Opinion and Order on this Motion.

Dated:  August 21, 2024                                    Respectfully Submitted,

CHARLES M. MURRELL III

By his attorneys,

/s/ *James M. Gross*
James M. Gross (admitted *pro hac vice*)
Jace Lee (admitted *pro hac vice*)
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, NY 10019
Tel:  212-812-0400
Fax:  212-812-0399
jgross@foleyhoag.com
jalee@foleyhoag.com

Anthony Mirenda (BBO No. 550587)
Allen M. Thigpen (BBO No. 707799)
Caroline Holliday (BBO No. 707301)
FOLEY HOAG LLP
155 Seaport Blvd., Suite 1600
Boston, Massachusetts 02210-2600
Tel:  617-832-1000
Fax: 617-832-7000
ADM@foleyhoag.com
athigpen@foleyhoag.com
cholliday@foleyhoag.com

## CERTIFICATE OF SERVICE

      I hereby certify that on the 21st day of August, 2024, I caused a copy of the above document to be electronically filed using the CM/ECF system. Plaintiff will serve this Memorandum on Defendants via the alternative means of service authorized by this Court's November 7, 2023 Order (ECF No. 20).

      /s/ *James M. Gross*
      James M. Gross