UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES M. MURRELL III,<br><br>                Plaintiff,<br><br>   v.<br><br>PATRIOT FRONT, THOMAS ROUSSEAU, AND JOHN DOES 1-99,<br><br>                Defendants. | Civil Action No. 1:23-cv-11802 |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT
OF HIS MOTION FOR DEFAULT JUDGMENT**

      Plaintiff Charles M. Murrell, through his counsel, respectfully submits this supplemental brief to address the Court's follow-up questions during the evidentiary hearing held on October 2 and 3, 2024. Specifically, Mr. Murrell writes to: (1) supplement the evidentiary record as permitted by the Court with a copy of the "manifesto" of Defendant Patriot Front; (2) identify evidence, and supplement the evidentiary record as permitted by the Court with additional evidence, confirming that Patriot Front lacked a permit to march in Boston on July 2, 2022; and (3) address the Court's questions regarding whether the lack of evidence as to each Defendant's financial condition impacts the imposition of any punitive damages award here. Mr. Murrell addresses each of those issues in turn.

      **1.**     **Manifesto**. Attached to the accompanying declaration of James M. Gross is a copy of Patriot Front's manifesto published on its publicly available website. Gross Decl., Ex. P. The manifesto is referenced in the Complaint, *see* Compl. ¶¶ 42-46, and was also discussed by Dr. Peter Simi during his testimony on October 3, 2024.

      **2.**     **Patriot Front's Lack of a Permit**. At the October 3, 2024 evidentiary hearing,

this Court asked whether there is any evidence confirming that Patriot Front lacked a permit to march on the streets and sidewalks of Boston on July 2, 2022. The answer is yes.

The Complaint establishes that Patriot Front members frequently participate in "'flash demonstrations' . . . at which members show up unannounced and without having applied for a city permit, and proceed to march in formation on public streets." Compl. ¶ 54. The Complaint further establishes that Patriot Front participated in such a "flash demonstration" on July 2, 2022 in Boston, Massachusetts. *Id.* ¶¶ 59, 101.

A July 15, 2022 Police Report from Police Officer Steven Chen entitled "The Patriot Front Protest" and obtained via a public records request to the Boston Police Department confirms that, as with other "flash demonstrations," Patriot Front did not obtain a permit before arriving in Boston on July 2, 2022. Gross Decl., Ex. Q. Specifically, Officer Chen wrote: "We were ordered . . . to only monitor and follow the protestors from a distance. My understanding of this order was to not engage the **non-permitted** group of protestors, unless criminal acts were observed." *Id.* (emphasis added).

Officer Chen's Police Report is consistent with statements made by Mayor Michelle Wu in the immediate aftermath of the July 2, 2022 attack on Mr. Murrell. At a press conference held on July 5, 2022, Mayor Wu, referring to Patriot Front, stated: "Here, we did not have intelligence ahead of time and did not, unfortunately, know that they were planning to come here and disrupt our festivities." Gross Decl., Ex. R.

3.     **Punitive Damages.**  At the conclusion of the October 3, 2024 hearing, the Court inquired how it should proceed when assessing a potential punitive damages award given that, as a consequence of Defendants' default, the record lacks evidence regarding the financial condition of Defendants Thomas Rousseau and Patriot Front. Mr. Murrell's counsel responded that in

these circumstances, the Court need not consider each Defendant's financial condition when assessing the amount of a punitive damages award.

Case law confirms that Mr. Murrell's proposed approach is the correct one.  As an initial matter, while a court may consider a defendant's ability to pay when determining the value of a punitive damages award, doing so is not a prerequisite to a punitive damages award.  That is apparent from decisions in both this Circuit and elsewhere awarding punitive damages even where the record was devoid of any evidence as to the defendant's ability to pay.  *See Acevedo-Luis v. Pagan*, 478 F.3d 35, 40 (1st Cir. 2007) (upholding award of punitive damages despite "no evidence . . . as to [defendant's] ability to pay"); *cf. Applied Cap., Inc. v. Gibson*, No. CIV 05-0098 JB/ACT, 2008 WL 4821336, at *10 (D.N.M. May 28, 2008) ("In most jurisdictions, a court is not barred from awarding punitive damages in cases where there is no evidence of the defendant's net worth.") (collecting cases).

Moreover, to the extent evidence of a defendant's ability to pay is relevant to assessing punitive damages, it is the defendant's burden to introduce that evidence as a basis for reducing the proposed award, not the plaintiff's burden to affirmatively prove a defendant's financial capacity to support a punitive damages award.  *See Fishman v. Clancy*, 763 F.2d 485, 490 (1st Cir. 1985) (rejecting defendants' challenge of punitive damages award because defendants had "chose[n] not to offer proof of their financial conditions," which rendered the court "unable to say that these awards are shocking because of the particular impact on [defendants]"); *see also Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 373 (2d Cir. 1988) ("The incompleteness of the record as to [defendant's] net worth is not a basis for reducing the punitive damages award against him, for it is the defendant's burden to show that his financial circumstances warrant a limitation of the award."); *Dunn v. HOVIC*, 1 F.3d 1371, 1391 (3d Cir.), *modified*, 13 F.3d 58 (3d

Cir. 1993) ("It is the defendant's burden to make th[e] evidentiary showing" that an award of punitive damages is excessive).

Consistent with those principles, courts have not hesitated to award large sums of punitive damages in the default judgment context despite limited or no evidence regarding a defendant's ability to pay.  *See Raycap Asset Holdings Ltd. v. Weber*, No. 3:22-CV-00083-KDB, DCK, 2023 WL 2594060, at *2 (W.D.N.C. Mar. 21, 2023) (awarding the statutory maximum in punitive damages of $8,295,000 despite "no evidence concerning the [d]efendants' ability to pay"); *HBCU Pro Football, LLC v. New Vision Sports Props., LLC*, No. WDQ-10-0467, 2011 WL 2038512, at *8 (D. Md. May 24, 2011) (awarding $1 million in punitive damages, despite no evidence as to the defendant's ability to pay); *Baldinger v. Ferri*, 541 F. App'x 219, 222 (3d Cir. 2013) (upholding punitive damages award of $537,500 despite only "limited" proof of defendant's assets because other relevant factors sufficiently justified the amount of punitive damages).  Those decisions make sense:  any other result would effectively reward the defendants for depriving the plaintiff of the ability to probe its financial condition via their refusal to participate in the lawsuit.

Accordingly, Mr. Murrell respectfully requests that the Court determine the appropriate scope of punitive damages here with reference to relevant factors other than each Defendant's ability to pay.  As Mr. Murrell detailed elsewhere (e.g., at ECF No. 47), those relevant factors include each Defendant's reckless indifference towards Mr. Murrell's federally protected rights, the reprehensibility of their conduct, their lack of remorse, and the need to deter Defendants from engaging in similar illegal conduct in the future.  *Id.* at 10-11.

Dated:  October 8, 2024

Respectfully Submitted,

CHARLES M. MURRELL III

By his attorneys,

/s/  *James M. Gross*
James M. Gross (admitted *pro hac vice*)
Jace Lee (admitted *pro hac vice*)
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, NY 10019
Tel:  212-812-0400
Fax:  212-812-0399
jgross@foleyhoag.com
jalee@foleyhoag.com

Anthony Mirenda (BBO No. 550587)
Allen M. Thigpen (BBO No. 707799)
Caroline Holliday (BBO No. 707301)
FOLEY HOAG LLP
155 Seaport Blvd., Suite 1600
Boston, Massachusetts 02210-2600
Tel:  617-832-1000
Fax: 617-832-7000
ADM@foleyhoag.com
athigpen@foleyhoag.com
cholliday@foleyhoag.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of October, 2024, I caused a copy of the above document to be electronically filed using the CM/ECF system.  Plaintiff will serve this Motion on Defendants via the alternative means of service authorized by this Court's November 7, 2023 Order (ECF No. 20).

/s/  *James M. Gross*
James M. Gross